UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLIN MICHAEL McINTYRE,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA BARNEY,<br><br>Defendant. | Case No. 1:19-cv-00295-DCN<br><br>**INITIAL REVIEW ORDER** |

The Clerk of Court conditionally filed Plaintiff Colin Michael McIntyre's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. Dkts. 1, 3. The Court now reviews the Complaint to determine whether any of the claims should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, the Court enters the following Order.

**1.     Screening Requirement**

The Court must review complaints filed by paupers and by prisoners seeking relief against a governmental entity or officer to determine whether summary dismissal is appropriate. If a complaint or any portion thereof states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, it is subject to summary dismissal. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## 2.      Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

**3.       Factual Allegations**

Plaintiff is a prisoner in the custody of the Federal Correctional Institution in Sheridan, Oregon. The Complaint does not arise from his present incarceration, but from his 2016 incarceration at the Idaho State Correctional Institution (ISCI), where Correctional Officer Joshua Barney worked. Plaintiff asserts that Barney extorted $1,200 from him between October 2016 and November 2016. Plaintiff further asserts that IDOC officials knew that Barney was extorting inmates, but they did nothing to stop him. Plaintiff includes no claims against anyone but Barney in his Complaint.

Barney was later indicted in federal court, convicted, and sentenced to federal prison. Plaintiff alleges, without explanation, that "he lost of year of [his] life" as a result of the extortion. Dkt. 1, p. 6. He requests compensatory damages.

**4.       Discussion of Eighth Amendment Failure to Protect Claim**

Prisoners are protected by the Eighth Amendment, which prohibits cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). To state a claim under the Eighth Amendment, Plaintiff must state facts showing that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. at 834.

Here, Plaintiff is complaining of a loss that may not be of a constitutional dimension. If Plaintiff contends that Barney caused damage to Plaintiff's emotional wellbeing by

extorting money from him, he does not have an Eighth Amendment cause of action for compensatory damages unless he can show that he suffered more than a de minimis physical injury. Title 42 U.S.C. § 1997e(e), enacted as part of the Prison Litigation Reform Act, provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." Thus, the Eighth Amendment does not support such a claim, and the Court sees no other construction of Plaintiff's facts that would state a Cruel and Unusual Punishment Clause claim.

**5.      Discussion of Claim Construed under the Fourteenth Amendment**

Claims for personal property deprivations (such as loss of money) generally are not covered by the Fourteenth Amendment Due Process Clause if the prisoner has an adequate remedy under state law. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels*, 474 U.S. at 330-31 (1986).

Idaho has adopted the Idaho Tort Claims Act (ITCA), Idaho Code § 6-901, *et seq*., to provide a remedy for persons injured by the tortious acts of governmental entities and officials. As a general rule, persons can sue for and recover monetary damages from Idaho governmental entities for damages arising out of negligent or otherwise wrongful acts or omissions of the entity and its employees acting within the course and scope of employment. Idaho Code § 6-903(a). However, if an individual government actor has acted with maliciousness or criminal intent, the ITCA does not apply, and liability attaches only to the *individual* employee (rather than the governmental entity). *Limbert v. Twin Falls County*, 955 P.2d 1123, 1125 (Idaho 1998); *Herrera v. Conner*, 729 P.2d 1075, 1085 (Idaho

Ct. App. 1986). In that instance, regular tort principles apply against the perpetrator in his or her individual capacity.

Applying these principles to Plaintiff's claims in this case, the Court concludes that Plaintiff does not have an ITCA claim against Barney in his official capacity for an intentional act of criminal extortion, but he does or did have a claim against Barney as an individual. As a result, § 1983 liability under the federal Constitution does not arise for such acts because there is an adequate state law remedy that can be, or could have been, pursued in state court.

6.      **Discussion of Eighth Amendment Wrongful Imprisonment Claim**

Plaintiff also asserts that he was wrongfully imprisoned when he was placed in segregation for 21 days and reprimanded for being extorted by Officer Barney. However, generally, there is no due process right to be free from segregation in prison. There is no constitutional right or liberty interest in being housed in a particular unit in prison or a particular facility. *See Meachum v. Fano*, 427 U.S. 215, 255 (1976); *McCune v. Lile*, 536 U.S. 24, 38 (2002); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). One exception is when a housing change occurs that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In *Sandin*, the United States Supreme Court examined whether a prisoner had a liberty interest in not being confined in disciplinary segregation. There, the Court held that, to determine whether there is a liberty interest, a court must analyze three factors: (1) whether disciplinary segregation was essentially the same as discretionary forms of

segregation [such as administrative segregation]; (2) whether a comparison between either the duration or degree of restriction of plaintiff's confinement and conditions in the general population showed that the plaintiff suffered a "major disruption in his environment;" and (3) whether the length of the plaintiff's sentence was affected. *Id*., 515 U.S. at 486-87. If these factors are not met, there is no liberty interest in not being placed in disciplinary segregation; therefore, a prisoner is not entitled to sue prison officials for due process violations arising from the disciplinary hearing.

The United States Supreme Court has acknowledged that "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." *Brown v. Oregon Dept. of Corr*., 751 F.3d 983, 988 (9th Cir. 2014) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)). In *Brown*, the Court of Appeals for the Ninth Circuit clarified the high threshold needed to support such a claim:

> [W]e need not locate the appropriate baseline here because Brown's twenty-seven month confinement in the IMU imposed an atypical and significant hardship under any plausible baseline. Confinement in the IMU subjected Brown to solitary confinement for over twenty-three hours each day with almost no interpersonal contact, and denied him most privileges afforded inmates in the general population. While these conditions alone might apply to most solitary-confinement facilities, here there is a crucial factor distinguishing confinement in the IMU: the duration of Brown's confinement [27 months].

*Id*.

Accordingly, unless Plaintiff has facts showing that his stay in segregation was of the severity or length discussed in the *Brown* case, he has no Eighth Amendment or

Fourteenth Amendment claim. Even if he did have such a claim, it cannot be asserted against Barney, but must be asserted against whichever prison officials personally participated in Plaintiff's placement in segregation. Plaintiff cannot proceed on this claim as alleged.

**7.      Discussion of Procedural Hurdles**

In addition to the substantive problems discussed above, Plaintiff also faces several procedural hurdles that must be overcome.

### A.      *Failure to Exhaust Administrative Remedies*

The Prison Litigation Reform Act of 1995 ("PLRA")[1] requires a prisoner to exhaust all available administrative remedies within the prison system before he can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The *Ngo* Court noted that "proper" exhaustion of administrative remedies means that "a prisoner must complete the administrative review process in accordance with the

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. Similarly, in *Jones v. Bock*, 549 U.S. 199 (2007), the Court clarified that, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the beginning of litigation, and "disputed factual questions relevant to exhaustion should be decided" at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id*. at 1170.

It is clear from the face of Plaintiff's Complaint that he did not exhaust his administrative remedies before filing suit. It is likely too late to do so. It is unclear whether Plaintiff has grounds to assert that he should be excused from this procedural requirement, but he should be aware that his case may be dismissed on this ground alone.

### B.    *Statute of Limitations*

Federal civil rights actions arising in Idaho are governed by a two-year statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to claims

brought under the Securities Exchange Act of 1934, not applicable here); Idaho Code §

5-219. The statute of limitations is tolled while the inmate exhausts administrative

grievance procedures pursuant to the Prison Litigation Reform Act (PLRA). *Brown v.*

*Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

Although the state statute of limitations governs the time period for filing a claim,

federal law governs when a claim accrues. *Elliott v. City of Union City*, 25 F.3d 800, 801-

02 (9th Cir. 1994). The Ninth Circuit has determined that a claim accrues when the plaintiff

knows, or should know, of the injury that is the basis of the cause of action. *See Kimes v.*

*Stone*, 84 F.3d 1121,1128 (9th Cir. 1996). Under this "discovery rule," the statute begins

to run once a plaintiff knows of his injury and its cause. *Gibson v. United States*, 781 F.2d

1334, 1344 (9th Cir. 1986).

The extent of a plaintiff's injury need not be known to trigger the start of the statute

of limitations period. Rather, a plaintiff need know only that he was damaged and the cause

of the damage. *See Abramson v. University of Hawaii*, 594 F.2d at 209 ("The proper focus

is upon the time of the discriminatory acts, not upon the time at which the consequences of

the acts became most painful.")

The Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are

not tolled by judicial construction but rather by the expressed language of the statute."

*Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).  Idaho statutorily tolls the

limitations  period for a person's minority status or insanity. I.C. § 5-230. The theory of

equitable estoppel is also available. While it "does not 'extend' a statute of limitation," it

works in a similar manner to prevent a party who has falsely represented or concealed a

material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statue may have already run." *J.R. Simplot Co., v. Chemetics International, Inc.*, 887 P.2d 1039, 1041 (Idaho 1994).

Plaintiff filed his lawsuit in 2019, more than two years after the 2016 incidents that constituted extortion. The Court has difficulty seeing how Plaintiff could not know that he was being extorted on the date it occurred. Thus, it appears that Plaintiff's claims were filed too late.

## 8.    Conclusion

Plaintiff will be given leave to file a brief demonstrating that his case was timely filed. He must provide an adequate set of facts demonstrating how he was unaware that he was being extorted in October 2016 through November 2016. He may also submit an amended complaint to remedy the other deficiencies set forth above. Alternatively, he can file a notice of voluntary dismissal.

///

///

///

///

///

///

///

///

///

## ORDER

**IT IS ORDERED** that, within **30 days** after entry of this Order, Plaintiff shall file a brief explaining how his claims are timely or that equitable tolling or equitable estoppel should be applied to prevent summary dismissal of his case on statute of limitations grounds. Within that same time frame, he shall also file an amended complaint to cure the deficiencies in the Complaint, together with a motion to amend. Failure to file anything further in this case will result in dismissal of this case without further notice.

DATED: November 19, 2019

David C. Nye
Chief U.S. District Court Judge